## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PAMELA ANDERSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:10-CV-3208** |
| | § | |
| **ERIC H. HOLDER, JR.** | § | |
| **ATTORNEY GENERAL** | § | |
| **U.S. DEPARTMENT OF JUSTICE,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND ORDER

Pending before the court are cross-motions for summary judgment filed by pro se Plaintiff Pamela Anderson ("Anderson" or "Plaintiff"), and by Defendant Eric Holder, Attorney General ("the government" or "Defendant"). After considering the motions, all responses thereto, and the applicable law, the Court concludes that Plaintiff's motion must be denied. Defendant's motion must be granted.

## I.    BACKGROUND[1]

As of 2009, Anderson was a GS-7 Legal Assistant in the United States Attorney's Office for the Southern District of Texas (the "USAO"), where she had been employed for over 25 years. (Signed Sworn Statement of Pamela Anderson ("Anderson Statement"), Doc. No. 17-1 at 1.) Anderson's duties as a Legal Assistant included supporting Assistant United States Attorneys ("AUSAs"), and performing administrative duties as needed. (*Id.*) Cristina

---

[1] Most of the facts summarized herein are drawn from uncontroverted summary judgment evidence submitted by Defendant. Plaintiff asserts a number of facts in her briefing that are unsupported by evidence, and that cannot, therefore, give rise to a genuine issue of material fact.

1

Stennett was Anderson's immediate supervisor. (*Id.*) AUSA Keith Wyatt, Chief of the Civil Division, was Anderson's second-level supervisor. (*Id.*) AUSA Daniel Hu was Wyatt's Deputy Chief. (*Id.*)

Plaintiff's Complaint (Doc. No. 1) details a number of issues she experienced at the USAO dating back to 1986. Although the facts are not entirely clear, it appears that Plaintiff filed several administrative complaints of employment discrimination, beginning in the late 1990s. Plaintiff asserts that her discrimination cases were consolidated, and that the case ultimately concluded in 2004.[2] (Pl. Response, Doc. No. 26-2 at 3.)

On or about June 25, 2008, AUSA Hu and Cristina Stennett conducted Anderson's mid-year performance review. (Anderson Statement at 4; Signed Sworn Statement of Cristina Stennett ("Stennett Statement"), Doc. No. 17-6 at 5.) The USAO's Human Resources Officer, Dell Mara Lovell, testifies that a mid-year review can be conducted anytime during the appraisal cycle, and can be used to advise employees of performance problems. (Signed Sworn Statement of Dell Mara Lovell ("Lovell Statement"), Doc. No. 17-8 at 5.) Before meeting with Anderson, Stennett requested feedback from Anderson's assigned attorneys regarding Anderson's performance. (Stennett Statement at 5.) Stennett testifies that five AUSAs reported problems with work performed by Anderson. (*Id.*)

During the mid-year review, Stennett told Anderson that Anderson's performance needed improvement. She cited problems in making travel arrangements as a particular issue, and informed Anderson that, if her performance did not improve, she would be placed on a Performance Improvement Plan ("PIP"). (Anderson Dep., Doc. No. 17-7 at 28:2-18; Stennett Statement at 5.) Anderson was not placed on a PIP at any time after the mid-year

---

[2] Plaintiff offers no evidentiary support for this contention; however, Defendant does not dispute it, and the Court accepts it as true for the purposes of this Memorandum and Order.

2

review. (Anderson Dep. at 34:22-35:1.) After meeting with Stennett, Anderson spoke with two of her assigned AUSAs, William Yahner and Jose Vela. (Anderson Statement at 5.) AUSA Yahner told Anderson that he had a problem with her performance on a scanning project. (*Id.*) Vela told Anderson that he did not have any problems with her work. (*Id.*)

On September 8, 2008, Anderson filed a formal complaint with the Executive Office for the United States Attorney's ("EOUSA's") Equal Employment Office ("EEO"), alleging that her May 2008 mid-year review was retaliatory. (Doc. No. 17-2.) Anderson's EEO complaint alleged that this action was taken in retaliation for Anderson's EEO activity in 1992, and for another EEO case in which she apparently was involved in the 1990s. (Anderson Statement at 3; Pl. Compl. ¶¶ 1-20.)

On January 22, 2009, Anderson failed to timely report for front office duty as she had been instructed by Stennett. (Anderson Dep. at 35:19-36:22.) Anderson admits that she arrived approximately thirty minutes late. (*Id.*) On February 25, 2009, Anderson emailed Stennett to let Stennett know that Anderson would be away from her desk on a conference call with the EOUSA's EEO Office. (Doc. No. 17-14.) Anderson sent a second email to Stennett shortly thereafter informing Stennett that the EEO staff wanted to interview Anderson from 8:45 to 9:45 a.m. that morning. (Doc. No. 17-15.) A few hours later, Stennett emailed Anderson a "letter of counseling" detailing deficiencies in Anderson's performance, including failure to report timely for front office coverage, failure to calendar events, and failure to mail a time-sensitive document in a timely fashion. (Doc. No. 17-3.)

On March 2, 2009, Anderson amended her complaint with the EOUSA's EEO office to include a claim of retaliation based on the February 25, 2009 letter of counseling. (Doc. No. 17-3.) The EOUSA's EEO office conducted an investigation into Anderson's retaliation

claims. Anderson requested a hearing through the Equal Employment Opportunity Commission ("EEOC"); however, the EEOC granted summary judgment to the USAO on April 29, 2010, precluding the need for a hearing. (Doc. No. 17-4.) On June 4, 2010, the Department of Justice's Complaint Adjudication Office issued its final decision, upholding the administrative judge's grant of summary judgment in the USAO's favor, and informing Anderson of her right to proceed in federal court. (Doc. No. 17-5.) Subsequent to the complaint at issue in this lawsuit, Anderson has filed two additional complaints of discrimination with the Agency—one on March 26, 2010, and the other on June 14, 2011. (Doc. No. 17-16.)

## II.    LEGAL STANDARD

Summary judgment is appropriate where the pleadings and evidence show that no genuine issue of material fact exists, and that the movant therefore is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to identify specific facts showing there is a genuine issue for trial. *Id.* "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (citation omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a

4

judgment in favor of the nonmovant." *Id.* at 1076 (internal quotations omitted). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). A court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### III.   ANALYSIS

Anderson claims that her May 2008 performance review and the February 2009 letter of counseling were undertaken in retaliation for EEO complaints. In order to establish a prima facie case of retaliation under Title VII, an employee must demonstrate that (1) she participated in an activity protected by Title VII; (2) she was subject to an adverse employment action which a reasonable employee would have found materially adverse; and (3) there was a causal connection between her participation in the protected activity and the adverse action. *Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 405-06 (5th Cir. 2007). An employment action is considered materially adverse if "the employer's actions [were] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006). Once an employee establishes a prima facie case of retaliation, the burden shifts to the employer to come forward with a legitimate, non-retaliatory reason for its actions. *Grice*, 216 F. App'x at 406. If it does so, the burden shifts back to the employee to show that the proffered reason is mere pretext for retaliation. *Id.*; *see also Rios v. Rossetti*, 252 F. 3d 375, 380 (5th Cir. 2001). Plaintiff complains of two materially adverse

employment actions actions, allegedly taken in retaliation for two discrete protected activities. The Court considers each allegedly retaliatory act separately.

### A. 2008 Mid-Year Review

Anderson alleges that Stennett retaliated against her when, during Anderson's 2008 mid-year review, Stennett told Anderson that Anderson needed to improve her performance. Anderson contends that this verbal admonition was issued in retaliation for protected activity that occurred in 1992, or possibly for a complaint Anderson filed in the late 1990s. (Doc. No. 17-1.) The government argues that Anderson fails to establish a prima facie case, and that it had legitimate, non-retaliatory reasons for telling Anderson that she needed to improve her performance.

#### 1. Prima facie case

Defendant argues that Plaintiff cannot establish the second and third elements of her prima facie case, because she cannot demonstrate an adverse employment action or a causal connection between her protected activity and the alleged adverse action. In *Burlington Northern*, 584 U.S. at 57, the Supreme Court considered the standard to be applied in determining what constitutes a "materially adverse action." It held that courts should not entertain retaliation claims involving "trivial harms" or "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* Rather, a materially adverse action is one that would dissuade a reasonable person from reporting discrimination. *Id.*

The question is whether Plaintiff's verbal, mid-year review during which she was told that her performance needed to improve can be considered a materially adverse action. In general terms, performance reviews are common in the workplace. The evidence in this

6

case indicates that mid-year reviews could by used to advise employees of performance problems. (Lovell Statement at 5.) Moreover, the fact that an employee at some point has filed a complaint of discrimination does not shield that employee from legitimate criticism. As the Fifth Circuit has explained, "a reasonable employee would not expect to be insulated from review of her questionable job performance simply because she filed a prior complaint of discrimination." *Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 414 F. App'x 630, 633 (5th Cir. 2011).

Nonetheless, the Supreme Court has made clear that "context matters," and that whether a particular plaintiff has sustained an adverse employment action depends on the circumstances. *Id.* It is certainly possible, therefore, that a negative performance review could constitute a materially adverse employment action in some cases. In this case, for example, Plaintiff alleges that Stennett's critiques were not legitimate, and that the effect of the negative performance review was to deprive Plaintiff of the opportunity to earn a $2000 bonus. According to Anderson, all other legal support staff had an "outstanding evaluation except for Plaintiff," and they were each given approximately $2,000 in award bonuses for these outstanding evaluations. (Doc. No. 30 at 2.) Of course, at the summary judgment stage, Plaintiff's unsupported contentions that the critiques were not based on valid complaints, or that the negative review resulted in Plaintiff's failure to receive a bonus, cannot themselves give rise to a genuine issue of material fact. Because she offers no evidentiary support, Plaintiff fails to establish that her mid-year performance review was an adverse employment action.

Even assuming that the 2008 mid-year review could be seen as materially adverse for its effect on Plaintiff's ability to earn bonuses, Plaintiff has failed to adduce any evidence of

7

causation. Plaintiff appears to rely on an inference of causation based on her EEO activity from over ten years earlier which, according to Plaintiff, was finally resolved four years prior to the mid-year review. Although retaliation can be inferred where there is temporal proximity between an EEO complaint and the adverse action, *Washburn v. Harvey*, 504 F.3d 505, 511 (5th Cir. 2007), such temporal proximity is absent here. In order for the timing of a challenged employment decision to be probative of retaliatory motive, "the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S.268, 273-74 (2001) (holding that a twenty-month period was not close enough to make a prima facie showing of causation). An inference of causation therefore is inappropriate in this case.

More importantly, Plaintiff acknowledges that neither Stennett nor Hu, the two supervisors who performed her mid-year review, were involved in her prior complaints. (Anderson Dep. at 23:10-16.) Plaintiff states only that she is "pretty sure that as management, [Stennett] was aware of [Plaintiff's] prior EEO activity." (Anderson Statement at 4.) Similarly, Plaintiff admits that none of her supervisors has ever commented on her prior EEO activity. (*Id.* at 21-22.) Plaintiff has produced no evidence that the allegedly retaliatory act taken in her mid-year review was related in any way to her earlier EEO complaints, and the Court concludes that no genuine issue of material fact exists as to causation. As Plaintiff has failed to prove that an adverse employment action was taken against her, or that any such action was causally related to protected activity, she has not established a prima facie retaliation claim.

### 2.  Legitimate, non-retaliatory reason

Because Plaintiff fails to establish a prima facie retaliation claim, the Court need not proceed further in its analysis. However, as Plaintiff is proceeding pro se, and because the

thrust of her argument is that there was no legitimate reason for her negative performance review, the Court briefly considers the subsequent prongs of the analysis.

In a signed, sworn statement, Stennett testifies that five attorneys reported experiencing problems with Anderson's work. (Stennett Statement at 5.) In her own signed, sworn statement, Plaintiff avers that she spoke with two attorneys after the meeting to ask them whether they had problems with her performance. AUSA William Yahner told her that a scanning assignment she worked on "could have gone faster." (Anderson Statement at 5.) AUSA Jose Vela said he did not have any problems with her work. (*Id.*) Emails sent by AUSA Venezia include complaints to Stennett about three errors Anderson had made when making travel arrangements. (Doc. No. 17-11.) An email from Anderson to AUSA Civil Chief Keith Wyatt confirms that Anderson provided Wyatt incorrect travel information. (Doc. No. 17-9.)[3]

Plaintiff spends much of her argument emphasizing why the AUSAs' reports to Stennett should not be considered. Plaintiff first contends that she was not specifically assigned to some of the attorneys who complained about her work. However, it is not self-evident that complaints about Plaintiff from attorneys to whom she was not specifically assigned would be inappropriate to discuss in a performance review, and Plaintiff submits no evidence to support this contention. Plaintiff also defends against the specific complaints against her, explaining that in most instances, she had not, in fact, done anything wrong, and

---

[3] Anderson contends that this incident was not her fault; however, for the purpose of determining whether Stennett had reason to give Anderson a negative performance review, the fact that Wyatt may have erroneously blamed this error on Plaintiff is irrelevant.

in other instances, the issues complained of were minor.[4] However, beyond her own bare assertions, Plaintiff has submitted no evidence proving that she did nothing wrong in these instances, nor has she submitted evidence indicating that the issues complained of were "minor." Moreover, though Plaintiff may be entirely justified in disagreeing with the underlying complaints sent to her supervisor about her performance, there is no evidence controverting Stennett's statement that Stennett did, in fact, receive these complaints about Anderson's performance. The fact that the complaints may not have been accurate does not preclude a finding that the reported performance issues give rise to a legitimate, non-retaliatory reason for Plaintiff's negative performance review.

### 3.  Pretext

Finally, in what the Court understands as Plaintiff's attempt to show pretext, Plaintiff points to an email sent by Stennett after Plaintiff's performance review. Stennett emailed Hu and Wyatt, attaching Plaintiff's review and asking whether they wanted to add or delete any information from the review. (Doc. No. 19-7.) The email also asks Hu and Wyatt to encourage other AUSAs to document any concerns they have with Plaintiff. (*Id*.) Plaintiff reads this email as an attempt to "build[] a case" against her. (Doc. No. 20-2 at 9.) This email alone is insufficient to show pretext. Indeed, in light of the performance issues reported to Stennett and Hu, Stennett's request for written documentation of concerns regarding Plaintiff's performance appears entirely reasonable. Ultimately, because Plaintiff fails to establish a prima facie case, because Defendant has shown a legitimate, non-

---

[4] Plaintiff also raises the issue of due process, urging that she was denied due process because she was not presented with documentary evidence regarding her performance deficiencies. Plaintiff has not stated a claim for due process in this case, so the Court does not consider these arguments.

retaliatory reason for its action, and because Plaintiff has failed to establish pretext, there is no genuine issue of material fact as to whether the 2008 mid-year review was retaliatory.

### B.  February 2009 Email Counseling

Plaintiff contends that the email counseling she received on February 25, 2009 (Doc. No. 17-3 at 2) was sent in retaliation for her complaint of discrimination filed with the EEO regarding the 2008 mid-year review. The email counseling addresses Plaintiff's failure to use the calendar feature on her Outlook email account to remind her of appointments, as well as her failure to mail a time-sensitive package. (*Id.*) It also counsels her for showing up thirty minutes late to provide front office coverage on January 22, 2009. (*Id.*)

As with the mid-year review, the government contends that this email does not constitute a materially adverse employment action, as it merely counsels Plaintiff—with no adverse results—regarding performance deficiencies. Plaintiff argues that the letter is critical of Plaintiff for missing a staff meeting during the time that Stennett knew that Plaintiff had an EEO conference call. Plaintiff concludes that the email therefore was designed to intimidate Plaintiff into not talking to the EEO investigator. A review of this email indicates no such motive. Although Stennett does comment that Plaintiff failed to accept an Outlook event for a staff meeting that took place at 10 a.m. on the morning of February 25, she does not chastise Plaintiff for failing to attend the meeting so that she could participate in the EEO call.[5] Instead, the criticism is that Plaintiff was improperly using her Outlook calendar; her failure to accept the staff meeting in Outlook was used as an example of that problem. Moreover, Plaintiff had informed Stennett that she would be meeting with the EEO office until 9:45 a.m. on February 25. (Doc. No. 17-15.) There is no reason that Plaintiff's meeting

---

[5] There is no evidence in the record indicating whether or not Plaintiff actually missed this meeting.

with the EEO should have prevented her from attending a 10 a.m. staff meeting that same day; thus, Stennett's reference to Plaintiff's failure to calendar the staff meeting simply cannot be read as an attempt to dissuade Plaintiff from speaking with the EEO office. Ultimately, there is no connection between Stennett's reference to Plaintiff's failure to calendar the staff meeting and Plaintiff's indication that she would be meeting with EEO staff that morning. The Court cannot read this email as a materially adverse action, and concludes that no reasonable employee would interpret it as such.[6] Thus, though the Court acknowledges that Defendant offers uncontroverted evidence as to its legitimate, non-retaliatory reasons for sending this email, and Plaintiff fails to offer evidence of pretext, the Court need not consider these subsequent prongs of the analysis. No genuine issue of material fact exists as to whether the 2009 email was retaliatory.

## IV.    CONCLUSION

In light of the foregoing, the Court concludes that Defendant's Motion for Summary Judgment must be **GRANTED**. Plaintiff's Motion for Summary Judgment must be **DENIED**.

**IT IS SO ORDERED**.

**SIGNED** this 7th day of May, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff does not allege that she suffered other adverse consequences as a result of this email, such as failure to receive a bonus (as alleged with regard to the mid-year review).

12